# IN THE UNITED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MARK BLACKMAN, JENNETTE ROBERTS, WILLIAM L. HARDEN, ARNOLD GREEN, AND JAMES McCRACKEN<br>    Plaintiffs, | )<br>)<br>)<br>)<br>)<br>) |
| vs. | ) CIVIL ACTION<br>) NUMBER: 3:11-cv-146<br>)<br>)<br>) JURY DEMAND |
| MIDWEST ENVIRONMENTAL RESOURCES, INC., TL WALLACE CONSTRUCTION, INC., O'BRIEN'S RESPONSE MANAGEMENT GROUP, INC., GLOBAL EMPLOYMENT SERVICES, INC., GOLDEN PROFESSIONAL SOLUTIONS, INC., PROFESSIONAL MANAGEMENT SERVICES GROUP, INC. D/B/A PEO MANAGEMENT GROUP AND/OR STAFFING CONCEPTS, STAFFING CONCEPTS INTERNATIONAL, INC., D/B/A SCI COMPANIES, INC., AND EMERGENCY RESPONSE GROUP<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COLLECTIVE ACTION COMPLAINT

1

Come now the Plaintiffs, Mark Blackman, Jennette Roberts, William L. Harden, Arnold Green, and James McCracken (collectively, "Plaintiffs"), by and through their undersigned counsel, and state the following:

1. Defendant Midwest Environmental Resources, Inc. ("MER") is a corporation conducting business in the State of Florida.  MER is a contractor of British Petroleum ("BP") engaged in clean-up efforts related to the massive oil spill that occurred in the Gulf of Mexico in April 2010.  MER hired and/or paid Safety Techs to perform general clean-up duties along the beaches of Florida.  Safety Techs were not required to have any specialized training prior to their hire, but were trained for two to three days prior to beginning work.  MER employed approximately 400 to 450 employees in July of 2010 to perform general clean-up duties along the beaches of Florida.

2. Defendant TL Wallace Construction, Inc. ("TLW") is a corporation conducting business in the State of Florida.  TLW, in conjunction with the other Defendants, hired and/or paid employees, including the Plaintiffs, to engage in clean-up efforts along the beaches of Florida related to the massive oil spill that occurred in the Gulf of Mexico in April 2010 .

3. Defendant O'Brien's Response Management, Inc. ("O'Brien's") is a corporation doing business in the State of Florida. On information and belief, O'Brien's is a contractor of British Petroleum ("BP") engaged in clean-up efforts related to the massive oil spill that occurred in the Gulf of Mexico in April 2010. O'Brien's, in conjunction with the other Defendants, hired and/or paid Safety Techs to perform these general clean-up duties along the beaches of Florida.

4. Defendant Global Employment Services, Inc. ("Global") is a corporation conducting business in the State of Florida. Global is a staffing company who, in conjunction with the other Defendants, hired and/or paid employees, including Plaintiffs, to engage in clean-up efforts related to the massive oil spill that occurred in the Gulf of Mexico in April 2010.

5. Defendant Golden Professional Solutions, Inc. ("Golden") is a corporation conducting business in the State of Florida. Golden is a consulting company who, in conjunction with the other Defendants, hired and/or paid employees, including Plaintiffs, to engage in clean-up efforts related to the massive oil spill that occurred in the Gulf of Mexico in April 2010.

6. Defendant Professional Management Services Group, Inc. ("PMS") d/b/a PEO Management Group and/or Staffing Concepts, is a corporation conducting business in the State of Florida.  Upon information and belief, PMS is a consulting company who, in conjunction with the other Defendants, hired and/or paid employees, including Plaintiffs, to engage in clean-up efforts related to the massive oil spill that occurred in the Gulf of Mexico in April 2010.

7. Defendant Staffing Concepts International, Inc. d/b/a SCI Companies, Inc. ("SCI")  is a corporation conducting business in the State of Florida.  SCI is a human resources outsourcing company who, in conjunction with the other Defendants, hired and/or paid employees, including Plaintiffs, to engage in clean-up efforts related to the massive oil spill that occurred in the Gulf of Mexico in April 2010.

8. Defendant Emergency Response Group ("ERG") is a corporation conducting business in the State of Florida.  Upon information and belief, ERG is contractor of BP who, in conjunction with the other Defendants, hired and/or paid employees, including Plaintiffs, to engage in clean-up efforts related to the massive oil spill that occurred in the Gulf of Mexico in April 2010.

9. Plaintiff Mark Blackman resides in Milton, Florida . From June of 2010 until approximately November of 2010, Blackman was employed by Defendants as a Safety Tech.

10. Plaintiff Jennette Roberts resides in Pensacola, Florida. From June of 2010 until approximately November 9, 2010, Roberts was employed by Defendants as a Safety Tech.

11. Plaintiff William L. Harden resides in Pensacola, Florida. From June of 2010 until approximately November 9, 2010, Harden was employed by Defendants as a Safety Tech.

12. Plaintiff Arnold Green resides in Pensacola, Florida. From approximately June of 2010 until September 15, 2010, Green was employed by Defendants as a Safety Tech.

13. Plaintiff James McCracken resides in Pensacola, Florida. From approximately June of 2010 until November 2010, McCracken was employed by Defendants as a Safety Tech.

14. This action is brought pursuant to the FLSA, 29 U.S.C. §201 et seq. and, specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendants, which have

deprived Plaintiffs, and all other similarly situated Safety Techs employed by Defendants, of their lawful wages.

15. This action is brought to recover unpaid compensation, in the form of unpaid wages and overtime, owed to the Plaintiffs, and all similarly situated Safety Techs employed by Defendants, pursuant to the FLSA. For up to three years prior to the filing of this complaint, Defendants have had a uniform policy and practice of consistently requiring all Safety Techs to work over 40 hours a week without paying them for every hour worked and without all overtime compensation due to them.

16. Plaintiffs and all other similarly situated Safety Techs employed by Defendants were paid an hourly wage of between $11.00 and $14.00 per hour.

17. Initially, Plaintiffs and, on information and belief, all similarly situated Safety Techs, were required to report to a parking lot and check in at a bus that would take them to their worksite.  The Safety Techs were required to report and sign-in at either 2:00 or 3:00 a.m. If they did not arrive and sign-in by the designated time (either 2:00 or 3:00 a.m.), they were not permitted to work that day.  Once they

arrived and signed-in, the Safety Techs were not allowed to leave the bus, even though the buses did not leave the parking lot until approximately 3:30 a.m.

18. The bus then transported the employees to the Myrick Yard, where they signed in by scanning their BP card. They were given something to drink and underwent an orientation explaining their assignment for the day.

19. The Safety Techs then got on different buses and departed for the beaches at approximately 5:00 a.m. They arrived at the beaches approximately 45 to 50 minutes later.

20. At the end of the day the buses eventually returned the Safety Techs to their cars at approximately 5:00 or 5:15 p.m. Even though they had were required by Defendants to arrive at either 2:00 or 3:00 a.m., they were generally only paid for twelve hours of work.

21. After approximately one to two weeks, Plaintiffs were told they could drive to the Myrick Yard directly. They nonetheless were still required to arrive at either 2:00 or 3:00 a.m., even though they were not paid until 4:30 a.m.

22. Starting in July 2010, all Safety Techs were required to park at the Pensacola Fairgrounds.  Plaintiffs and all other similarly situated Safety Techs were required to sign-in on a company bus at approximately 2:00 a.m.  The employees were not permitted to write the actual time they were signing in on these "Accountability Sheets."  The sign-in times were completed later by Defendants, and the sign-in times were usually adjusted to 5:00 a.m.  Employees were told if they refused to sign this Accountability Sheet with either a blank or false sign-in time, they would not be permitted to work.  The employees were not permitted to leave the bus once they signed in.  The buses departed for the Myrick Yard at 4:00 a.m. and arrived at the Myrick Yard approximately twenty-five minutes later.  At the Myrick Yard, the buses stopped briefly for the employees to scan their BP cards, receive something to drink, and get on different buses.  Those buses left at 5:00 a.m. and arrived at the beach approximately 45 to 50 minutes later.  Plaintiffs and all other similarly situated Safety Techs were not returned to their cars until approximately 5:00 or 5:15 p.m.  Despite working this fifteen-hour day, Plaintiffs and all other similarly situated Safety Techs were only paid for twelve hours of work.

23. Starting in August 2010, the Plaintiffs were again permitted to drive directly to the Myrick Yard, where they were required to sign in at 4:30 a.m., depart on a bus at 5:00 a.m., and arrive back at the Myrick Yard at 5:00 to 5:15 p.m.  Since August of 2010, Plaintiffs and all other similarly situated Safety Techs have only been paid for twelve hours of work per day, even though they worked over twelve hours each day.

24. Some workers, including Plaintiffs Jennette Roberts and James McCracken, worked the night shift, from approximately 6:00 p.m. to 6:00 a.m.  These workers were also required to arrive two hours before the buses left, at 4:00 p.m., to sign in and wait for the 6:00 p.m. departure.  They also were not paid for the two hours of waiting time.

25. Employees were also required to sign blank "Pink Forms."  These forms had blanks for entries regarding Employee Information, hours, and zones worked.  Employees were not permitted to fill in any part of the "Pink Form" other than their signatures.  Upon information and belief, Defendants completed the remainder of these "Pink Forms" with false information regarding the numbers of hours that Plaintiffs and all other similarly situated Safety Techs worked.  Plaintiffs and all

other similarly situated Safety Techs were not permitted to review these forms after they had been completed by Defendants.

26. Employees who complained about not receiving proper pay or who completed a "Discrepancy Form" identifying a discrepancy in their paychecks were not permitted to return to work or were put on "stand down," meaning they were not called back to work.

27. Plaintiffs and all other similarly situated employees were also required to attend training lasting two or three days. Plaintiffs and other similarly situated employees were not paid for this training time.

28. In performing their work as Safety Techs, Plaintiffs performed non-managerial duties and functions involving little, or no, independent judgment and did not customarily and regularly exercise any discretion. On information and belief, all Safety Techs employed by Defendants had these same duties and responsibilities.

29. Plaintiffs' duty, as well as the duty of all other similarly situated Safety Techs, was to clean up the oil that had spilled onto Florida's beaches.

30. Plaintiffs, and all other similarly situated Safety Techs, did not have any employees of their own and did not have the authority to hire,

fire, promote, determine starting pay for, give pay raises to, discipline or train employees of Defendants. Nor did they make any effective recommendations regarding these actions. They also did not determine budgets, delegate work assignments, or adopt policies on behalf of the Defendants, or effectively recommend any such actions.

31. Plaintiffs and, on information and belief, all other similarly situated Safety Techs, performed the same duties and responsibilities, have been treated identically by Defendants, and are similarly situated for purposes of their job duties.

32. Plaintiffs and, on information and belief, all other similarly situated Safety Techs, did not customarily or regularly supervise two or more employees for 80 hours a week.

33. Plaintiffs and all similarly situated Safety Techs who elect to participate in this action, seek unpaid wages and overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

34. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.  Venue is proper in the Northern District of Florida, pursuant to 28 U.S.C. §1391(b).

35. Defendants are subject to personal jurisdiction in the State of Florida for the purpose of this lawsuit.

36. At all times material to this action, Defendants have been enterprises engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA.

37. At all times relevant to this action, Defendants were "employers" of Plaintiffs as defined by §203(d) of the FLSA.

38. At all times material to this action, Plaintiffs, and all others similarly situated Safety Techs, were "employees" of Defendants as defined by §203(e)(1) of the FLSA. They also worked for Defendants within the territory of the United States within three years preceding the filing of this lawsuit.

39. The provisions set forth in §207 of the FLSA apply to Defendants, and the Plaintiffs and all similarly situated Safety Techs were covered by §207 of the FLSA during their employment with Defendants.

40. On information and belief, Defendants have intentionally failed and/or refused to pay Plaintiffs and all other similarly situated Safety Techs according to the provisions of the FLSA.

41. Defendants' systems and practices relating to their non-payment of earned wages and overtime to Plaintiffs and all similarly situated Safety Techs, which deprive the Defendants of any FLSA overtime exemptions, have existed since at least June of 2010.

42. On information and belief, Defendants have been aware of the requirements of the FLSA and its corresponding regulations and their own violations of the FLSA since at least June of 2010.  Despite this knowledge, Defendants have failed to pay the Plaintiffs and similarly situated Safety Techs the amount of pay required by the FLSA.

43. There are numerous similarly situated Safety Techs of Defendants who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly situated employees are known to Defendants and are readily identifiable and can be located through Defendants' records - specifically, all Safety Techs who have been employed by Defendants and have not been properly compensated would benefit from Court-Supervised Notice and the opportunity to join the present lawsuit and should be so notified.

44. On information and belief, Defendants have engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay Plaintiffs and all similarly situated Safety Techs in accordance with §207 of the FLSA.

45. As a result of Defendants' violations of the FLSA, Plaintiffs and all other similarly situated Safety Techs have suffered damages by failing to receive compensation in accordance with §207 of the FLSA.

46. In addition to the amount of unpaid wages and benefits owed to the Plaintiffs, and all other similarly situated Safety Techs, they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b) and prejudgment interest.

47. On information and belief, Defendants' actions in failing to compensate Plaintiffs and all other similarly situated Safety Techs in violation of the FLSA, were willful.

48. On information and belief, Defendants have not made a good faith effort to comply with the FLSA.

49. Plaintiffs and all Safety Techs are also entitled to an award of attorney's fees pursuant to 29 U.S.C. §216(b).

50. Plaintiffs and all other similarly situated Safety Techs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for lost overtime and wages, back-pay, and a declaratory judgment is their only means of securing adequate relief.

51. Plaintiffs and all other similarly situated Safety Techs are now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated Safety Techs, pursuant to §216(b) of the FLSA, pray for the following relief:

1. At the earliest possible time, they be allowed to give notice, or that the Court issue such Notice, to all Safety Techs who have been employed by Defendants during the three years immediately preceding the filing of this suit, and to all other potential plaintiffs who may be similarly situated, informing them that this action has been filed, the nature of the action, and of their right to opt-into this lawsuit if they were not paid

       compensation and benefits for all hours worked pursuant to 29 U.S.C. §216(b);

2. An order awarding damages in the amount of their respective unpaid compensation and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b), and/or prejudgment interest;

3. An order awarding reasonable attorneys' fees, including the costs and expenses of this action;

4. Such other legal and equitable relief including, but not limited to, any declaratory relief to which they may be entitled;

5. An order requiring Defendants to make Plaintiffs and all other similarly situated Safety Techs whole by awarding them lost wages (plus interest) and liquidated damages; and

6. Plaintiffs further demand a jury to try the issues when joined.

## JURY DEMAND

**THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.**

DATED: March 28, 2011

          Respectfully submitted,

          /s/_____
          Joshua R. Gale
          FL Bar No.: 63283

          *Attorney for Plaintiffs*

OF COUNSEL:

Wiggins, Childs, Quinn & Pantazis LLC
Main Street Center
101 North Woodland Blvd.
Suite 600
DeLand, FL 32720
TEL:   (386) 675 - 6946
FAX:   (386) 675 -6947


**Defendants May Be Served At:**

Midwest Environmental Resources, Inc.
19597 Chef Menteur Hwy
New Orleans, LA 70129

TL Wallace Construction, Inc.
CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324

O'Brien's Response Management Group, Inc.
NRAI Services, Inc.
515 E. Park Ave.
Tallahassee FL 32301

17

Global Employment Services, Inc.
Thomas C. Staples
41 N. Jefferson St. Suite 400
Pensacola, FL 32501

Golden Professional Solutions, Inc.
Kevin D. Nelson
30 S. Spring Street
Pensacola, FL 32502

Professional Management Services Group, Inc., d/b/a
PEO Management Group and/or Staffing Concepts
Corporation Service Company
1201 Hays Street
Tallahassee FL 32301

Staffing Concepts International, Inc. d/b/a SCI Companies, Inc.
Corporation Service Company
1201 Hays Street
Tallahassee FL 32301

Emergency Response Group
Robert Huard
215 Fair Point Dr.
Gulf Breeze, FL 32561